UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILDBERRY CONDOMINIUM ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-cv-2130 |
| v. | ) ) | Hon. Steven C. Seeger |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

A hail storm damaged buildings owned by Plaintiff Wildberry Condominium Association in the summer of 2017. Wildberry tendered a claim to its insurer, Defendant The Travelers Indemnity Company of America. But the insured and the insurer could not see eye to eye on the amount of the covered losses. So Wildberry eventually filed this lawsuit.

Two months later, Travelers filed a lawsuit of its own against Wildberry in state court. Travelers then moved to dismiss or stay this federal action in deference to the later-filed state court case. Wildberry, on the other hand, moved this Court to compel Travelers to participate in an appraisal process dictated by the insurance policy. The policy contains a provision that allows the parties to resolve the amount of the loss by appointing third-party appraisers and an umpire.

The motion to dismiss or, in the alternative, to stay filed by Travelers is denied. The motion to compel appraisal filed by Wildberry is also denied.

### Background

On July 30, 2017, a thunderstorm blew through the Chicagoland area. Condominium buildings owned by Plaintiff Wildberry Condominium Association stood in the storm's path.

And, as the complaint tells it, they took a beating. According to Wildberry, the rooftops of 28 buildings suffered significant damage from the wind and the hail. *See* Cplt., at ¶ 6 (Dckt. No. 1).

Wildberry promptly submitted a claim for coverage to its insurer, Defendant The Travelers Indemnity Company of America. *Id.* at ¶ 7. Travelers sent an adjuster to the property on September 27, 2017. *See* Mem. in Support of Mtn. to Compel Appraisal, at 3 (Dckt. No. 12). The insurer ultimately approved $150,372.31 for the damage to the roofs of five (and only five) of the buildings. *See* Cplt., at ¶ 8 (Dckt. No. 1); *see also* 6/5/18 Letter (Dckt. No. 12-10).

That amount, in Wildberry's view, was much too low. It submitted photos and other evidence showing damage to 28 buildings, not just five of them. *See* Cplt., at ¶ 9. Wildberry also gave its insurer a copy of a local building ordinance from the municipality, requiring "monolithic" replacement of roofs and siding. *Id.* So, as the Court understands it, the ordinance does not allow patchwork for roofing. If any part of a roof needs to be replaced, the entire roof needs to be replaced.

A few months later, Wildberry sent the insurer a Proof of Loss showing a much higher estimate of damage. According to Wildberry, the 28 buildings suffered damage totaling $3,479,205, more than 20 times the amount tallied by the insurer. *Id.* at ¶ 10; *see also* Sworn Statement in Proof of Loss (Dckt. No. 12-13).

But the insurer did not budge. Travelers tendered a check to Wildberry for $67,270.21. That amount represented the replacement cost for five rooftops ($150,372.31), minus $73,102.10 for depreciation and $10,000 for the deductible.

The parties engaged in months of back and forth about the damage to the property. And in the meantime, more thunderstorms rolled through Chicago. Some of the storms brought hail. The additional hail raises a question: which hailstorm caused the hail damage?

During the negotiations, Wildberry invoked the appraisal provision of the policy. That provision creates a process for independent third parties to decide the amount of the loss. Basically, each side selects an appraiser, and the two appraisers select an umpire. A decision by two of the three about the "amount of the loss" is "binding." The policy reads:

> If we and you disagree on the value of the property, the amount of Net Income and operating expense or *the amount of loss*, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraiser will state separately the value of the property, the amount of Net Income and operating expense or *the amount of loss*. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be *binding*.

*See* Policy, at ¶ E.2 (Dckt. No. 12-6, at 6 of 6) (emphasis added).

Travelers refused to participate in the appraisal process. In its view, the provision applies to a dispute about the "amount" of the loss, but not the *cause* of the loss. And here, the parties disagree about what caused the loss because it is unclear which thunderstorm caused the damage. As Travelers sees it, the appraisal provision does not apply to a dispute about loss causation, so the dispute belongs in a courthouse.

After months of dialogue, Wildberry and Travelers could not agree on the amount of the loss. So, on April 3, 2020, Wildberry filed a three-count complaint against Travelers in federal court.

Count I is a declaratory judgment claim. Wildberry seeks a declaration that it is entitled to coverage under the policy for the full extent of the damage. Wildberry also invokes the appraisal process, asking this Court to "(i) declare that appraisal is the appropriate form of dispute resolution for this matter, and (ii) compel Travelers to submit the damages sustained from the July 30, 2017 loss to the appraisal process pursuant to the terms of the Policy." *See*

3

Cplt., at ¶ 18 (Dckt. No. 1). Wildberry also requests a declaration that it is entitled to payment under the policy for the loss, and that the "appraisal panel shall determine the amount of the loss in accordance with the Policy and Illinois law." *Id.* at ¶ 19.

The other two claims seek monetary damages. *Id.* at ¶¶ 22–23, 28. Count II is a breach of contract claim, alleging that Travelers breached the agreement to provide coverage. Count III alleges that Travelers denied the claim in bad faith within the meaning of the Illinois Insurance Code.

Wildberry later filed a motion to compel appraisal. *See* Pl.'s Mtn. (Dckt. No. 11). The motion echoes the request for relief in Count I of the complaint. That is, Wildberry seeks an order compelling Travelers "to submit the valuation of the loss to an appraisal hearing for resolution." *Id.*

Travelers, it seems, preferred to resolve the dispute in state court. Two and a half months after Wildberry filed this lawsuit, Travelers filed a lawsuit of its own against Wildberry in the Circuit Court of Cook County. *See* State Ct. Cplt. (Dckt. No. 16-1).

Travelers brought three claims in state court. *Id.* First, the insurer claims that Wildberry demanded the appraisal process too late. Second, Travelers seeks a declaration that the appraisal process does not apply to causation issues. Third, the insurer claims that it has no obligation to pay costs of construction resulting from code requirements of the municipality (that is, for monolithic rooftop replacements).

That same day, Travelers filed a motion in federal court to dismiss or, in the alternative, to stay this case. *See* Mtn. (Dckt. No. 16). The insurer points to the hot-off-the-press complaint filed in state court. Travelers argues that the federal case should take a backseat because the state case involves issues of state law, and there is no need for two courts to hear one dispute.

**Discussion**

**I.      The Motion to Dismiss or, in the Alternative, to Stay**

Travelers makes two arguments why this federal action should defer to the state court case. First, Travelers argues that this Court should decline to exercise jurisdiction under the *Wilton/Brillhart* doctrine, which applies when a case involves a request for declaratory relief. Second, Travelers invokes the *Colorado River* abstention doctrine, arguing that this Court should defer to parallel state proceedings.

**A.      The *Wilton/Brillhart* Doctrine**

Travelers begins with the argument that this Court should exercise its discretion and decline to declare the rights of the parties under the Declaratory Judgment Act.

The Declaratory Judgment Act vests district courts with the option, but not the obligation, to declare the rights of the parties. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." *See* 28 U.S.C. § 2201(a) (emphasis added). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The text gave rise to the *Wilton/Brillhart* doctrine, which recognizes that "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009); *see also Wilton*, 515 U.S. at 282 (recognizing that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites") (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)).

5

"*Wilton-Brillhart* abstention applies when 'a federal court [is called upon] to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties.'" *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting *Brillhart*, 316 U.S. at 495) (brackets in original). Under the doctrine, a district court may – not must, *may* – abstain when "solely declaratory relief is sought and parallel state proceedings are ongoing." *See Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010).

The doctrine is rooted in the statutory text and grounded in federalism and comity. *Id.* "We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory." *See Reiter v. Illinois Nat'l Cas. Co.*, 213 F.2d 946, 948 (7th Cir. 1954) (quoting *Ponzi v. Fessenden*, 258 U.S. 254, 259 (1922)). Federalism requires a "spirit of reciprocal comity and mutual assistance to promote due and orderly procedure." *Id.* In that spirit, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *See Brillhart*, 316 U.S. at 495. Other considerations such as efficiency and fairness factor into the analysis, too. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995) ("When a related state action is pending, concerns about comity, the efficient allocation of judicial resources, and fairness to the parties come into play.").

The "classic example" of the *Wilton/Brillhart* doctrine is a federal case involving "solely declaratory relief" and a state case between the "same parties" with the "same precise legal question." *See Envision*, 604 F.3d at 986–87; *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 380 (7th Cir. 2019). "Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *See Envision*, 604 F.3d at 986. But the existence of a parallel suit in state court is neither necessary nor sufficient. *See*

*Medical Assur. Co., v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) ("Even if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit."); *Envision*, 604 F.3d at 986 (noting that the "classic example" does "not mean that abstention is limited to parallel proceedings"); *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 590 (7th Cir. 1970) ("[T]he mere pendency of another suit is not enough in itself to refuse a declaration.").

District courts must consider a number of factors when applying the *Wilton/Brillhart* doctrine, but they are not exclusive. *See Brillhart*, 316 U.S. at 495 ("We do not now attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of a district court's discretion."); *Arnold*, 752 F.3d at 707. The factors include "whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time." *See Zavalis*, 52 F.3d at 692. Whether to abstain "is an inherently discretionary call for the district court, 'because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [its] grasp." *See Arnold*, 752 F.3d at 707 (quoting *Wilton*, 515 U.S. at 289).

There is "no doubt" that a district court "may dismiss or stay an action under the *Wilton/Brillhart* abstention doctrine where solely declaratory relief is sought." *See R.R. St.*, 569 F.3d at 715. But there is a wrinkle where, as here, a federal case involves a claim for declaratory relief and a claim for something else (like damages).

7

In that situation, the court must decide whether the non-declaratory claims are "independent" of the declaratory claim. *Id.* A non-declaratory claim is independent of a declaratory claim if it is "alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id.*; *see also id.* at 716 n.6 ("A claim for non-declaratory relief is 'independent' of the declaratory claim if: 1) it has its own federal subject-matter-jurisdictional basis, and 2) its viability is not wholly dependent upon the success of the declaratory claim.").

If the non-declaratory claim can stand on its own, then it is independent of the declaratory claim. In that situation, the "*Wilton/Brillhart* doctrine does not apply," and the court "must hear the independent non-declaratory claims." *Id.* at 717. But if the non-declaratory claim cannot exist without the declaratory claim, then they are not independent, and the court "can exercise its discretion under *Wilton/Brillhart* and abstain from hearing the entire action." *Id.* at 716–17.

The test reflects the fact that the *Wilton/Brillhart* doctrine rests on discretion afforded by the text of the Declaratory Judgment Act. The statute gives district courts the power to decline to issue a declaratory judgment. But it does not empower courts to decline to hear other types of claims. If the non-declaratory claim is independent – and could stay in the case even if the declaratory claim went away – then the court must hear it. In that situation, there is no discretion to dismiss the entire case because the court must hear the non-declaratory claim anyway. Dismissing the declaratory claim in that situation would make things worse, not better. *Id.* at 715–16 ("If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation.") (citation omitted).

The Seventh Circuit illustrated the point in *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711 (7th Cir. 2009). There, a distributor and its insurer (as subrogee) sued a manufacturer of dry-cleaning solvent. *Id.* at 713. The plaintiffs sought a declaratory judgment that the manufacturer had a duty to indemnify the distributor for third-party claims brought by people injured by the solvent. *Id.* at 713–14. They also demanded monetary damages under a variety of claims, including breach of contract. *Id.*

Meanwhile, the parties were embroiled in state court litigation in California on the same core issues. *Id.* at 713–14. So the federal case and the state case involved the same basic dispute between the same parties. The district court ultimately dismissed the case under the *Wilton/Brillhart* doctrine.

The Seventh Circuit addressed whether the doctrine applies when a case involves both declaratory and non-declaratory relief. The Court of Appeals "adopt[ed] the following test: Where state and federal proceedings are parallel and the federal suit contains claims for both declaratory and non-declaratory relief, the district court should determine whether the claims seeking non-declaratory relief are independent of the declaratory claim." *Id.* at 716. A non-declaratory claim is independent if it can "stand alone." *Id.* at 717. If the claims are independent, then the Court has no discretion under the *Wilton/Brillhart* doctrine because the case will stay in federal court anyway. But if the claims are not independent, then the Court has discretion to "abstain from hearing the entire action." *Id.*

The Seventh Circuit took a look at the complaint and concluded that the declaratory and non-declaratory claims were independent. The claims for damages could "continue to exist" in the case, even if the plaintiffs never brought a claim for declaratory judgment at all. *Id.* at 715. The district court would still have diversity jurisdiction over the claims for damages, even "if the

9

request for a declaration simply dropped from the case." *Id.* at 715, 717 (citation omitted). The "requested declaratory relief is not a prerequisite to resolution of those claims" for damages, so the claims were independent. *Id.* at 717.

The independence of the non-declaratory claims meant that the *Wilton/Brillhart* doctrine did not apply. The non-declaratory claims stood on their own two feet, and the Declaratory Judgment Act did not give the district court any discretion to dismiss non-declaratory claims. The district court "was without discretion under *Wilton/Brillhart* to dismiss the non-declaratory claims," so the lower court "should have exercised its discretion under that doctrine to retain the declaratory claim." *Id.*; *see also Eaton Corp. v. Westport Ins. Co.*, 2017 WL 4876291 (E.D. Wis. 2017) (holding that the *Wilton/Brillhart* doctrine did not apply when an insurance case involved claims for declaratory and non-declaratory relief).

The Seventh Circuit's decision in *R.R. Street* compels the same outcome here. Wildberry requests a declaratory judgment that it is entitled to insurance coverage. But it also advanced two other claims. The complaint includes a breach of contract claim, as well as a claim under the Illinois Insurance Code for bad faith delay. Each of those claims seeks monetary damages. *See* Cplt., at ¶¶ 22–23, 28.

Wildberry could drop the declaratory judgment claim, and continue to press the claims for monetary damages. There is nothing jurisdictionally or substantively essential about keeping the declaratory judgment claim in the case. So this Court lacks the discretion to dismiss the case. Even if Court dismissed the declaratory judgment claim, the case wouldn't go anywhere.

Travelers argues that it is "unfathomable" that Wildberry can recover money damages if it does not prevail on the declaratory judgment claim. *See* Mtn., at 7 (Dckt. No. 16). As Travelers sees it, the claims are joined at the hip on the merits – Travelers can't win the breach of

contract claim if it does not prevail on the declaratory judgment claim, too. But the question for *Wilton/Brillhart* purposes is not whether the claims are likely to rise or fall together on the merits down the road. The question is whether the non-declaratory claims could continue even if the declaratory claims went away. They could, so this case must stay here.

Travelers thinks that there was no need for Wildberry to add the breach of contract claim because the declaratory judgment claim covers the same ground. The insurers views it as a "belt and suspenders approach to pleading." *See* Mtn., at 7 (Dckt. No. 16). Maybe so, but it makes no difference. The claim for damages could stay in the case without the declaratory judgment claim, so it needs to stay put. The suspenders can support the case, even without the belt.

Travelers contends that the three claims "are like dominoes." *See* Reply, at 8 (Dckt. No. 22). That is, "if its declaratory judgment action for coverage falls, so, too, do its other two claims." *Id.* A better analogy is that each claim in the case is like a three-legged stool. No claim depends on the existence of any other claim. Each claim is on firm ground, and does not rest on any other claim for support. Each claim can stand on its own.

> B.     The *Colorado River* **Abstention Doctrine**

Next, Travelers argues that the Court should decline to hear this case under the *Colorado River* abstention doctrine.

Federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them." *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The duty to exercise jurisdiction rests on "the undisputed constitutional principle that Congress, *and not the Judiciary*, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Public Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359 (1989) (emphasis added). Ordinarily, district courts must carry the

"heavy obligation to exercise jurisdiction." *Colorado River Water Conservation Dist.*, 424 U.S. at 820. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813.

But in "exceptional" circumstances, a federal court may abstain from hearing a case in the interest of "wise judicial administration." *Id.*; *see also id.* ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'") (citation omitted). "Only the clearest of justifications will warrant dismissal." *Id.* at 819. "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *See Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

Courts apply a two-part test to decide whether the *Colorado River* abstention doctrine applies. The first step is whether the state case and the federal case are parallel. *Id.* Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1019. That is, the question is "not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

The federal suit and the state suit do not need to be identical. "Precise[] formal symmetry" is "unnecessary." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498–99 (7th Cir. 2011). They need to head in the same direction. The cases can't be perpendicular, but they do not need to be perfectly parallel, either.

If the federal case and the state case are not parallel, then the *Colorado River* abstention doctrine does not apply, and there is no need for the court to walk to step two. *Id.* If in doubt, the federal court should keep the case. *See AAR Int'l, Inc.*, 250 F.3d at 520 ("[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction."); *Freed*, 756 F.3d at 1019.

If the cases are parallel, then a court must proceed to step two. A court must balance ten factors and consider whether they weigh in favor of abstaining from the case. The ten factors include:

(1) whether the state has assumed jurisdiction over property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of the state court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claims.

*Id.* at 1018.

The decision "does not rest on a mechanical checklist," but on a "careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. But from the get-go, the scales tilt in favor of retaining federal jurisdiction. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16 (noting that the "balance [is] heavily weighted in favor of the exercise of jurisdiction").

In the case at hand, step one is undisputed. The parties agree that the state suit and the federal suit are parallel because they involve the same core dispute between the same parties. *See* Joint Status Report, at 1 (Dckt. No. 33) (referring to the "parallel action in state court"); *see also* Pl.'s Resp., at 10 (Dckt. No. 21) (agreeing that "the cases appear to be parallel").

So the Court proceeds to step two. After considering all of the factors, and considering the record as a whole, the Court concludes that there are no "exceptional circumstances" that favor dismissal.

A number of the factors don't move the needle, one way or the other. The dispute is not an *in rem* proceeding, so this case does not involve a piece of property over which the state court has already exercised jurisdiction. Both state court and federal court are convenient. Both cases are close to the starting line, too – neither is meaningfully ahead of the other. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 479 (7th Cir. 2020) (noting that the "relative progress of the litigation in each place" is "[m]ore important" than "the literal order in which the two competing courts obtained jurisdiction"). Each court has jurisdiction to hear the case.

The deck is stacked in favor of keeping the case in federal court, so neutral factors weigh against abstention (think of each neutral factor as a blown opportunity to have a reason to litigate elsewhere). *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011) ("[B]ecause of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction."); *see also Woodford v. Cmty. Action Agency of Green Cty., Inc.*, 239 F.3d 517, 523

(2d Cir. 2001) ("[T]he facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it."). The default rule is staying put. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25–26 ("[W]e emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.") (emphasis in original).

Wildberry did file in federal court first, more than two months before Travelers opened a second front and filed suit in state court.[1] The order matters somewhat, but it is not a race, either. More importantly, the Seventh Circuit does not put much stock in the "first to file" rule. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) ("[W]e have repeatedly taught that this circuit does not rigidly adhere to a first-to-file rule."). There is no such thing as calling "dibs" on the courthouse.

Other factors tilt in favor of litigating this case in state court, but not heavily. The insurance policy raises an issue of Illinois law, and state court is an obvious place to litigate state law. But federal courts are well-versed in resolving cases under state law, too. And in recent years, several courts in this district have addressed the very issue of loss causation under state law that is at the crux of this dispute. *See, e.g., Adam Auto Group, Inc. v. Owners Ins. Co.*, 2019 WL 4934597 (N.D. Ill. 2019); *Runaway Bay Condo. Assoc. v. Philadelphia Indem. Ins. Cos.*, 262 F. Supp. 3d 599 (N.D. Ill. 2017); *Spring Point Condo. Assoc. v. QBE Ins. Corp.*, 2017 WL 8209085 (N.D. Ill. 2017). The issue is a routine player. Federal courts can adjudicate this type of claim, without requiring any special expertise in state law.

---

[1] Travelers isn't exactly engaged in forum shopping by filing suit in state court. It is more like Travelers is attempting to return Wildberry's selection to the store.

15

The need to avoid piecemeal litigation might, in theory, favor abstention. But not here. The state court has stayed that proceeding, for now, pending this Court's rulings on the motions at hand. *See* Joint Status Report (Dckt. No. 33). But in light of the state-court stay, the state litigation is not moving full steam ahead.

Piecemeal litigation is disfavored, and rightly so. *See Freed*, 756 F.3d at 1022. Needless to say, "duplicating the amount of judicial resources required to reach a resolution" is bad for everyone. *See Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004). It wastes finite resources, and it creates a risk of inconsistent results, too. *See Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992). But that concern exists whenever there is a lawsuit in both state and federal court. The need to avoid duplicative litigation is not enough to support abstention – otherwise, it would turn the presumption on its head. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 649 (7th Cir. 2011) ("Abstention requires more than the pendency of another lawsuit, because judicial economy will always be an issue when there is concurrent litigation."). If the existence of state court litigation is all that it takes for a federal court to stand down, the "high hurdles" for abstention would be a low barrier. *Id.*

The unavailability of removal might favor retaining jurisdiction. If this Court dismissed the case, and the case proceeded in state court, Wildberry would be the defendant. A defendant has no right to removal when sued in its home state. *See* 28 U.S.C. § 1441(b)(2). If this Court dismissed the case, Wildberry would have no right to bring it back (through removal). But the lack of access to a federal forum is not so worrisome, because it is unlikely that an Illinois jury in Illinois state court would be biased against an Illinois entity (here, Wildberry). *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 479 (7th Cir. 2020) ("[I]n a case with in-state defendants, the risk of bias against an out-of-state party is also not likely to be significant.").

16

The federal case is not vexatious litigation. Wildberry believes that the filing of the state court litigation was "contrived," and was nothing more than a delay tactic. *See* Resp., at 14 (Dckt. No. 21). Whatever the motivation for filing the state court case, there is no argument that the federal action was an attempt to pull the rug out from under the state court.

In the end, there is not much reason to relinquish this Court's unwavering duty to exercise jurisdiction. A federal court could hear this dispute, and so could a state court. The tie goes to staying put in federal court. Travelers has not pointed to any exceptional circumstances that would justify dismissal.

## II. The Motion to Compel Appraisal

The case will stay in federal court, so the next issue is Wildberry's motion to compel appraisal. Wildberry asks this Court to force Travelers to participate in the appraisal process that, in its view, is required by the insurance policy.

At first blush, a "motion to compel" sounds like the sort of thing that a district court might entertain. The phraseology echoes the name of a motion that courts confront under the Federal Rules on a nearly daily basis. Courts have a track record of compelling parties to do what they agreed to do.

But here, there is a procedural wrinkle. Count I of the complaint asks this Court to "declare that appraisal is the appropriate form of dispute resolution for this matter," and "compel Travelers to submit the damages sustained from the July 30, 2017 loss to the appraisal process pursuant to the terms of the Policy." *See* Cplt., at ¶ 18 (Dckt. No. 1). Wildberry then asks for a declaration that it is entitled to damages from the storm, and that the "appraisal panel shall determine the amount of the loss in accordance with the Policy and Illinois law." *Id.* at ¶ 19.

So, the motion to compel asks this Court to grant the relief (or most of it, anyway) that Plaintiff seeks in the complaint. Wildberry's motion to compel asks this Court to issue a ruling on the interpretation of the policy, seeking something akin to specific performance. Before reaching that issue, the Court should hear from both sides and allow Travelers to answer the complaint.

A court does have the power to enter judgment in a party's favor based solely on the pleadings. But not just a *pleading*, singular. "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *See* Fed. R. Civ. P. 12(c). Rule 12(c) refers to "pleadings," plural, and the pleadings do not close until a defendant has filed an answer. *See* Fed. R. Civ. P. 12(a)(1)(A); Fed. R. Civ. P. 7(a).

Here, the pleadings are not closed. Wildberry filed a complaint, but Travelers has not yet filed an answer. A court can't enter judgment after hearing only one side of the story (with a few exceptions, such as default). Travelers needs to respond to the complaint and file an answer before the Court can consider a motion for judgment on the pleadings.

Other courts in this district have reached the same result. Courts have treated a motion to compel appraisal as a motion for judgment on the pleadings, ordering an appraisal only after the defendant has filed an answer. *See, e.g., Adam Auto Group, Inc. v. Owners Ins. Co.*, 2019 WL 4934597, at *2 (N.D. Ill. 2019) ("[T]he Court grants Adam Auto's motion for judgment on the pleadings on count 1 and directs the parties to engage in the appraisal process under the insurance policy . . . ."); *Runaway Bay Condo. Assoc. v. Philadelphia Indem. Ins. Cos.*, 262 F. Supp. 3d 599 (N.D. Ill. 2017) (granting a motion to compel appraisal after the defendant had

filed an answer); *Spring Point Condo. Assoc. v. QBE Ins. Corp.*, 2017 WL 8209085, at *4 (N.D. Ill. 2017) (granting a motion to compel appraisal after the defendant had answered).[2]

So, for now, the motion to compel an appraisal is denied. Wildberry may file a motion for judgment on the pleadings someday, but it must wait until "[a]fter the pleadings are closed." *See* Fed. R. Civ. P. 12(c).

## Conclusion

For the foregoing reasons, the motion to dismiss or, in the alternative, to stay filed by Travelers is denied. The motion to compel appraisal filed by Wildberry is denied.

Date: February 28, 2021

Steven C. Seeger
United States District Judge

---

[2] On the merits, Travelers argues that the appraisal process does not apply to causation issues. The Court notes that at least three cases in this district – *Adam Auto Group, Runaway Bay Condo. Assoc.*, and *Spring Point Condo. Assoc.* – soundly rejected that argument, supported by lengthy string cites. *See Adam Auto Group, Inc.*, 2019 WL 4934597, at *2 ("[C]ourts have 'routinely' rejected the argument that issues that implicate damage causation are not appropriate for resolution by appraisal.") (citation omitted); *Runaway Bay Condo. Assoc.*, 262 F. Supp. 3d at 601 (noting that "courts have routinely rejected" the notion that the "task of determining the value of the damage can be meaningfully separated from the task of determining what caused the damage"); *Spring Point Condo. Assoc.*, 2017 WL 8209085, at *2 ("Courts in this district have also rejected insurers' previous efforts to frame causation disputes as coverage issues as QBE attempts to do in this case."). They did not see much daylight between the *amount* of the loss and the *cause* of the loss. If something *else* caused the damage, then it wasn't a loss within the meaning of the policy, and the loss was nothing.